## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HAROLD LOYLD ROBERTS, JR.**

      **Plaintiff,**

**v.**                                 **Civil Action No. 5:14cv28**
                                              **(Judge Stamp)**

**JIM RUBENSTEIN, Commissioner;**
**CHERYL BURKS, RN, HSA; and**
**MARY WESTFALL, Director of**
**Risk Management,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

      Harold Roberts ("Plaintiff"), an inmate incarcerated at the Denmar Correctional Center ("DCC") in Hillsboro, West Virginia, initiated this *pro se* case on February 25, 2014, by filing a civil rights complaint pursuant to 42 U.S.C. §1983 against the above-named defendants. On March 3, 2014, Plaintiff paid the full filing fee of $400.00. By Order Regarding Preliminary Review and Service of Process entered March 4, 2014, summonses were issued for each Defendant. The docket reflects that a certified mail return receipt for Jim Rubenstein ("Rubenstein") shows that he received a copy of the summons and complaint on March 11, 2014; Cheryl Burks ("Burks") received a copy on March 10, 2014; but no signed certified mail receipt ever was returned for Mary Westfall ("Westfall").

      On March 26, 2014, Rubenstein filed a Motion to Dismiss (Dkt.# 11), and on April 1, 2014, Burks and Westfall filed a Motion to Dismiss. (Dkt.# 16). Because Plaintiff was proceeding *pro se,* the Court issued <u>Roseboro</u> Notices on March 27 and April 2, 2014. On April 11, Plaintiff filed his response to Defendants' dispositive motions, titled Reply to

Respondents [sic] Answer. (Dkt.# 22). Plaintiff also filed a Motion for Injunctive Relief. (Dkt.# 21). On April 15, 2014, Defendants filed responses to Plaintiff's motion. (Dkt.# 23 and 24).

This case is before the undersigned for a Report and Recommendation on Defendants' dispositive motions.

## II. <u>Contentions of the Parties</u>

### A. <u>The Complaint</u>

In his complaint, Plaintiff alleges that he is 61 years old and has suffered from severe hip pain and stomach ailments over the past two years. He contends that he has seen DCC's Wexford medical staff for his complaints numerous times and has "patiently cooperated" by "taking their medications, [and] doing their physical therapy exercises (Without qualified therapist [sic]) all without success." (Dkt.# 1, p. 8).

Plaintiff alleges that his stomach problems include "extreme" gas such that everything he eats makes him belch, cramps and constipation, which caused him to strain to defecate and resulted in a "lower hernia." He contends that "Dr. Ray" told him that he needed an upper GI to rule out gall bladder disease but the defendants have refused to approve him for the same. Although not stated in his complaint, in an attached copy of a June 12, 2013 response to a grievance, it is apparent that he underwent a June 29, 2012, colonoscopy and polypectomy to investigate his symptoms and was prescribed several different medications and treatments to relieve his stomach discomfort. (Dkt.# 1-8, p.3).

Plaintiff alleges that his left hip pain[1] is so severe that at times he can hardly stand and he has fallen twice from numbness in his leg.[2] He admits having been prescribed a muscle relaxant as well as pain and inflammation medications for the same. He also avers he has had x-rays and a CT scan of his hip, done without contrast, to investigate his hip pain and was told that "all showed well." (Dkt.# 1-3, p.2). However, he argues that it is "malpractice [sic] [to do a CT scan without dye] when they are done with dyes normally." (Id.).

Plaintiff avers that through his own medical research, he has determined that he probably has a "bad sciatic nerve," because the same can result in "all the symptoms" he experiences. He seeks to obtain an MRI to confirm this and asserts that it is "the only test that will show this damaged nerve if administered correctly" and asserts that "a single lazer [sic] surgery" will correct this allegedly damaged nerve.

Plaintiff contends his condition is worsening; he is losing sleep over his medical problems; he still has ten years left to serve and he cannot survive that long without the requested medical interventions because his suffering is "taking a terrible toll" on him.

For relief, Plaintiff requests compensatory damages as well as costs and fees should he later retain counsel. He also seeks injunctive relief in the form of Defendants providing him with copies of his medical records and protection from retaliation by Defendants, including protection from any retaliatory transfer to another facility. Further, he requests an Order directing DCC medical staff to provide "correct and adequate medical diagnostic evaluation testing to discern the true nature of . . .

---

[1] Plaintiff's complaint does not identify which hip is involved; information about the same was gleaned through reviewing the copies of grievances attached to his complaint. See Dkt.# 1-3 at 2.

[2] While plaintiff complains of left hip pain, it is apparently the right leg that "goes out on . . . [him] . . . likely from … [his] back injury from the mines." Dkt.# 1-5 at 2.

[his] affliction and to . . . prescribe the proper treatment necessary to recover from this condition and not . . . passifier [sic] treatment." (Dkt.# 1, p. 10).

**B. Motion to Dismiss by Jim Rubenstein, Commissioner, West Virginia Division of Corrections**

Defendant Rubenstein contends that Plaintiff's complaint should be dismissed because it fails to state an Eighth Amendment claim for deliberate indifference and Plaintiff cannot establish any liability on Rubenstein's part based upon a theory of *respondeat superior*.

**C. Motion to Dismiss by Cheryl Burks, RN, HSA and Mary Westfall, Director of Risk Management**

Defendants Burks and Westfall argue that Plaintiff's complaint should be dismissed due to insufficient service of process; for failure to state a claim upon which relief can be granted and with respect to Plaintiff's medical negligence claims, because he has not complied with the procedures of the West Virginia Medical Professional Liability Act ("MPLA").

**D. Plaintiff's Response**

Plaintiff reiterates his arguments and attempts to refute Defendants' on the same. Further, he alleges that Defendants' dispositive motions should be struck from the record as untimely served.

### III. <u>Standard of Review</u>

<u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. <u>Revene v. Charles County Comm'rs</u>., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>.

To survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id</u>.; <u>see also</u> <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id</u>.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, <u>Haines</u>, 404 U.S. at 520, even under this less stringent standard, a

*pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

### III. Analysis

#### A. Deliberate Indifference to Serious Medical Needs

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[3]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998); Beaman v. Unger, 838 F.Supp.2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) report and recommendation adopted, 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

**1) Jim Rubenstein**

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, to establish liability under §1983, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainright, 802 F.2d 397, 401 (11th Cir. 1986).

Here, Plaintiff's entire claim against Rubenstein appears to be that Rubenstein denied Plaintiff's appeal of administrative grievances seeking various diagnostic medical evaluations when "he had the authority to order Wexford to provide" the same. (Dkt.# 1, p. 2).

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel, like a warden, may rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Miltier, *supra* at 855. Accordingly, Rubenstein, as the Commissioner of the West Virginia Division of Corrections, did not and should not substitute his own medical judgment for that of medical professionals.

There is no *respondeat superior* liability under §1983. See Monell, 436 U.S. at 691; see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra*. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under §1983 if the following elements are established:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[4]

---

[4] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

Plaintiff's complaint alleges that Defendants' motive in denying care is to "minimize costs"[5] and to "save the State money."[6] In his response to Defendants' dispositive motion, Plaintiff asserts for the first time that Defendants' alleged deliberate indifference to his medical needs is part of a pattern or custom at the DCC. He provides names and medical details of several other DCC inmates who he alleges have been similarly denied care by Defendants and requests that the court obtain their medical records for review. (Dkt.# 22, p. 6). He cites case law from other jurisdictions in support of his argument that Rubenstein has a personal or public duty to ensure him adequate medical care. (Dkt.# 22, p.7). Finally, he reiterates his claim that Rubenstein should be liable for the acts of his subordinates in denying care because "he was duly informed of the lack of medical treatment and upheld the negligent acts of his subordinates through the grievance procedure." (Dkt.# 22, p. 7).

Regardless of Plaintiff's insistence that Rubenstein has a personal duty to ensure adequate care, the case law in this jurisdiction is that non-medical supervisory personnel, such as wardens, are entitled to rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Militier, *supra* at 855. Accordingly, Rubenstein was entitled to rely on the DCC medical staff's decisions regarding Plaintiff's care. Further, to the extent that Plaintiff is asserting that Rubenstein was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a Bivens[7] claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

---

[5] Dkt.# 1, p.3.

[6] Dkt.# 1, p.2.

[7] It is well established that case law under 42 U.S.C. §1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504 (1978).

Because Plaintiff fails to allege any credible personal involvement on the part of Rubenstein beyond the denial of the appeal of his grievances, he does not make any allegations which reveal the presence of the required elements for supervisory liability and he fails to state a claim against Rubenstein.

**2) Cheryl Burks, RN, HSA and Mary Westfall, Director of Risk Management**

Westfall contends that Plaintiff's complaint should be dismissed because in her position as the Director of Risk Management for Wexford Health Sources, Inc. ("Wexford"), her job is to recognize and manage the risks of liability to Wexford, not to provide medical care to Plaintiff. Moreover, Westfall notes that Plaintiff's complaint fails to allege that she had any direct involvement in any decision regarding his medical care. Instead, Plaintiff merely alleges as follows: "She supervises Defendant Burks and restricts her discretion to authorize proper diagonostic and treatment services to minimize costs." (Dkt.# 1, p.3). She should therefore "be held accountable for her workers when they fails [sic] to perform special services they are suppose to do…." (Id.).

The undersigned agrees with Westfall. As noted above, liability under §1983 is personal, based upon each defendant's own constitutional violations. See Trulock, *supra* at 402. Because Westfall had no personal involvement in Plaintiff's medical care, Plaintiff cannot prove she committed or failed to perform any act in violation of his constitutional rights, let alone show that she was causally connection to any harm he suffered. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

Burks avers that she is a registered nurse who serves as the Health Services Administrator at the DCC. She asserts that despite the allegation in Plaintiff's complaint, that she is "the primary care giver having authority to order tests to be done and fails to do so . . . [in order] to save the

State money . . . [and] refuses to authorize needed diagnostic testing to obtain proper treatment[,]"[8] nowhere in the complaint does Plaintiff allege that she personally was involved in his treatment or that that she personally denied him any tests, procedures, treatment or medications. Rather, Burks notes that Plaintiff only alleges that various other medical staff prescribed medications or provided treatments and that her only involvement was to deny his grievances over the care provided by others. Finally, she asserts that as a nurse, she has no authority to prescribe medications or order testing because only the treating physician can do so.

In his response to Burks' dispositive motion, Plaintiff argues that if defendant Burks was not the one responsible for approving his upper GI, then "who is[,] and as such . . . plaintiff . . . request[s] leave of Court to amend the complaint to include an unknown respondent [sic]." (Dkt.# 22, pp. 3-4). Further, Plaintiff contends that because Burks is the one who responded to his grievances challenging the denial of medical care, "she is to be held accountable for any deficiencies in treatment." (Dkt.# 22, p.3).

In making a recommendation for a ruling on a motion to dismiss, the undersigned must "'accept as true all of the factual allegations contained in the complaint,' and 'draw all reasonable inferences in favor of the plaintiff.'" Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). To prevail, a plaintiff must "state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). It is true that a district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded. See Haines v.

---

[8] Dkt.# 1, p.2.

<u>Kerner</u>, *supra* at 520. However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. <u>Weller v. Dept. of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Here again, despite Plaintiff's insistence otherwise, Burks has only a supervisory position at the DCC and has no personal involvement in Plaintiff's medical care. Because she had no personal involvement in his care, Plaintiff cannot prove she committed any act that violated his constitutional rights, let alone show she is causally connected to any harm he suffered. <u>See</u> <u>Zatler</u>, 802 F.2d at 401. Likewise, to the extent that Plaintiff is asserting that Burks was deliberately indifferent to his needs because of her role in denying his administrative grievances, again, as noted above, that claim also lacks merit, because that is not the type of personal involvement required to state a <u>Bivens</u> claim. <u>Paige</u> *supra* at *1.

In summary, it is undisputed that Plaintiff has been repeatedly seen, examined, and treated for his many complaints from at least June of 2012[9] through the date he filed his complaint on February 25, 2014. It is equally clear that Defendants, via Wexford Health Sources, have attempted to diagnose Plaintiff's medical problems and relieve his discomfort by trying various treatments when others proved unsuccessful. It is Plaintiff, not a medical provider, who has self-diagnosed himself with a sciatic nerve problem and with the need for an MRI and possible laser surgery. Plaintiff's uninformed opinion does not establish the standard of care for his treatment. Moreover, the medical article from <u>www.ehow.com</u> plaintiff attached to his complaint regarding sciatic nerve and hip pain[10] actually supports Defendants' position that Plaintiff has received appropriate care. It recommends many of the treatments that Plaintiff has already received and

---

[9] Dkt.# 1-8 at 3.

[10] Dkt.# 1-10 and 1-11.

states that if "nerve pain is severe . . .*your doctor may order a cat scan* or MRI to see what is affecting the sciatic nerve." (Dkt.# 1-10, p.1) (emphasis added). Plaintiff has already received a CT scan and his allegation that malpractice was committed because his CT scan was done without intravenous contrast has no merit. CT scans of hips are never done with contrast; rather, IV contrast is either sometimes or always used for CT scans of the head, neck/soft tissue, extremities, spine, chest, urogram (a scan of the kidneys, ureters, and bladder), "stone searches" of the urinary system and blood vessels in a specific body region.[11]

The record fails to establish that any of the individual Defendants acted with deliberate indifference to Plaintiff's medical needs. Rather, it appears Plaintiff was treated appropriately; provided with numerous diagnostic tests including x-rays, a CT scan, a colonoscopy with polyp removal, numerous medications and physical therapy. The fact that Plaintiff would prefer a different course of treatment is simply irrelevant. A mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright, 766 F.2d at 849. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See Chance, 143 F.3d at 703 and Estelle, 429 U.S. at 106. "The constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . ." "[T]he essential test is one of medical necessity and not simply of desirability." Dean, 804 F.2d at 215 (citations omitted) (alterations in original). "[A]lthough it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy." United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987)(emphasis in original). Furthermore,

---

[11] http://mnap.com/radiology/ct-scan/types-of-ct-scan/

the medical care required by <u>Estelle</u> need not be the best possible care, it only has to be "reasonable" care. <u>Vinnedge v. Gibbs</u>, 550 f.2d 926 (4th Cir. 1977); <u>see also</u> <u>Blanks v. Cunningham</u>, 409 F.2d 220 (4th Cir. 1969); <u>Edwards v. Duncan</u>, 355 F.2d 993 (4th Cir. 1966).

Finally, the majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; i.e. "no care," rather than "bad care." <u>See</u> e.g., <u>Holmes v. Sheahan</u>, 930 F.2d 1196 (7th Cir. 1991), *cert. denied*, 502 U.S. 960 (1991). Here, even if the undersigned concluded that Plaintiff received "bad care," which he does not, Plaintiff did receive care. Inasmuch as there is no evidence in the record other than Plaintiff's conclusory allegation that he should have had an Upper GI or an MRI and laser surgery, or that he was provided less than reasonable care, his Eighth Amendment Claim against Defendants should be dismissed.

Moreover, to the extent that Plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).[12]

In his response to Defendants' dispositive motions, Plaintiff contends that his failure to comply with the MPLA's pre-suit requirements is merely "another procedural error," and that his failure to provide the statement of an expert is entitled to the common knowledge exception of W.Va. Code §55-7B-6(c) which is granted "where the lack of care or want of skill is so gross as to be apparent or the alleged breach relates to non-complex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 629 S.E.2nd 739, 744 (W.Va. 2006). Finally, Plaintiff argues that a screening certificate of

---

[12] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

merit is unnecessary because Plaintiff's statement on an administrative claim form satisfies the requirements of W.Va. Code §55-7B-6(c).[13]

With regard to the appropriate standard of care, Plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for his stomach or hip issues. Further, despite Plaintiff's claim to the contrary, under the circumstances of this case, Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to Defendants' alleged breach of the duty of care. Further, this is not a case of alleged malpractice so obvious that it entitles Plaintiff to the common knowledge exception of W.Va. Code §55-7B-6(c).[14] This is not a case where the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, *supra* at 851. Accordingly, the negligence alleged here is does not relieve Plaintiff of the obligation to comply with the MPLA pre-suit requirements.

Therefore, even if this court had supplemental jurisdiction over Plaintiff's potential state law claims for medical malpractice, summary dismissal would be appropriate.

**B. <u>Service of Process</u>**

Defendants Burks and Westfall argue that service upon them was insufficient under Rule 4(c)(2) of the Federal Rules of Civil Procedure because Plaintiff, a party to this action, is the one who attempted service upon them by personally mailing a copy of the Summons and Complaint to

---

[13] <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D. W.Va. 2005)(plaintiff's pre-suit administrative claims held sufficient to provide pre-suit notice without a screening certificate of merit, where he was implanted with a penile prosthesis that was not only too large, it was also inserted backwards, causing diminished blood flow, necrosis and infection, entitling the plaintiff to the common knowledge exception of W.Va. Code §55-7B-6(c)).

[14] An example of such a case would be "hospital fall incidents, where a majority of jurisdictions <u>do not</u> require expert testimony. <u>McGraw v. St. Joseph's Hosp</u>., 200 W. Va. 114, 120, 488 S.E.2d 389 (W.Va. 1997)(emphasis in the original).

them. They note that while Plaintiff did file a signed, certified mail return receipt for Burks, indicating her receipt, Westfall never received her copy of the Summons and Complaint and no certified mail return receipt for her was ever returned or filed.

Further, Burks and Westfall argue that Plaintiff did not follow West Virginia Rule of Civil Procedure 4(d)(1)(D) by having the Clerk send a copy of the Summons and Complaint to the individual via certified mail, return receipt requested, and delivery restricted to the addressee, or by 4(d)(1)(E), by having the Clerk send a copy of the Summons and Complaint via first class mail, postage pre-paid, to the person to be served . . . "

When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D. W.Va. 2009). When it is evident that a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Rule 4 of Federal Rule of Civil Procedure sets forth the requirement for service, providing in pertinent part:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>
> 1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where services is made; or
>
> 2) doing any of the following:
>
>     A) delivering a copy of the summons and of the complaint to the individual personally;
>
>     B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>     C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Here, Plaintiff contends that the instructions he received from the Clerk's office led him to believe that service of process only had to be conducted by certified mail and he argues that the summonses were actually served by a "third party"[15] and not him personally. He also argues that a mere procedural error should not preclude review of his claims.

Plaintiff's claim fails. There is no question in the record that Plaintiff is the one who attempted to serve Defendants by mailing the Summonses and Complaints by certified mail, which, as a party, he is precluded from doing under Fed.R.Civ.P. 4(c)(2). Moreover, because Fed.R.Civ.P. 4(m) states that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant, or direct that service be effected within a specified time, provided that the plaintiff shows good cause for the failure.

Here, Plaintiff's complaint was filed on February 25, 2014; therefore, Defendants should have been served on or before June 25, 2014. Plaintiff has not shown good cause for his failure to properly serve Defendants. While Defendants were entitled to have the complaint dismissed without prejudice for failure to effectuate service, they also provided responses on the merits of Plaintiff's claims. Because Plaintiff has failed to state a claim upon which relief can be granted as to his Eighth Amendment claims, dismissal in this case should be with prejudice.

## C. <u>Untimely Responses by Defendants</u>

Finally, Plaintiff objects to the admission of the "respondents [sic] answer [sic]" because he contends he did not timely receive it within 21 days after service of the summons upon them, but rather, within 23 days.

---

[15] Presumably, plaintiff means the mailman.

The instructions to Defendants on the Summonses were "[a] lawsuit has been filed against you. Within 21 days after service of this summons on you *(not counting the day you received it)* . . . you must serve on the plaintiff and answer . . . or a motion under Rule 12 of the Federal Rules of Civil Procedure." (Dkt.# 7)(emphasis added).

Here, defendant Rubenstein received his Summons and Complaint on March 11, 2014 (Dkt.# 10, p.3); fifteen days later, on March 26, 2014, he filed his dispositive motion electronically with the court and deposited a copy in the U.S. Mail, postage pre-paid. (Dkt.# 11, p.3). Defendant Burks received a copy of the Summons and Complaint on March 10, 2014 (Dkt.# 10 at 3); on April 1, 2014, exactly 21 days later, not counting the day Burks received the Summons, she and Westfall (who never received a copy of the Summons and Complaint at all) filed their dispositive motion electronically with the court and placed a copy in the U.S. Mail, postage pre-paid, to Plaintiff. (Dkt.# 16, p.3).

Plaintiff's claim that he did not receive his copy until after the twenty-first day has no merit and he apparently misunderstands the Federal Rules. Rule 5(b) of the Federal Rules of Civil Procedure directs how and when service is accomplished. That Rule states in pertinent part:

(a) Service: When Required.

(1) In General. Unless these rules provide otherwise, each of the following papers must be served on every party:

(B) *a pleading filed after the original complaint* . . .

(D) a written motion . . .

(b) Service: How Made . . .

(2) Service in General. A paper is served under this rule by:

(A) handing it to the person;

(B) leaving it:

> (i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
>
> (ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>
> (C) *mailing it to the person's last known address—in which event service is complete upon mailing[.]*

Fed.R.Civ.P. 5(b)(emphasis added).

Accordingly, Defendants' dispositive motions were timely served on the day they deposited them in the United States Mail for delivery to Plaintiff, and this claim, like the rest of Plaintiff's claims, fails to state a claim upon which relief can be granted.

## V. <u>Recommendation</u>

For the reasons stated above, the undersigned hereby recommends that Defendants' Motions to Dismiss (Dkts.# 11 and 16) be **GRANTED** and plaintiff's complaint be **DENIED and DISMISSED with prejudice, for failure to state a claim upon which relief can be granted**. Further, the undersigned recommends that Plaintiff's pending Motion for Injunctive Relief (Dkt.# 21) be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED:  1-30-2015

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE